IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WENDY REICHERT                   :    CIVIL ACTION
                                 :
          v.                     :
                                 :
THE PATHWAY SCHOOL,              :
et al.                           :    NO. 11-622


MEMORANDUM

McLaughlin, J.                              March 26, 2013

        The plaintiff, Wendy Reichert, initiated this case in her
capacity as parent of John Doe, who, while attending defendant
Pathway School, was repeatedly sexually abused by an older
student on school premises.  Ms. Reichert brings her suit
against Pathway School under a negligence cause of action.  She
brings her suit against Garnet Valley School District, which
participated in the placement of John Doe at Pathway and
remained responsible for his education, under the "state-created
danger" theory of 42 U.S.C. § 1983.

        There are two pending motions in this case.  Pathway
School has moved for partial summary judgment on the plaintiff's
claim for punitive damages.  Garnet Valley has moved for summary
judgment on the entirety of the plaintiff's state-created danger
claim.  For the reasons stated below, the Court denies Pathway's
motion for partial summary judgment, and it grants Garnet
Valley's motion for summary judgment.

I. <u>Factual and Procedural History</u>

A.   <u>Factual Summary</u>[1]

Minor-plaintiff John Doe was a student residing within the Garnet Valley School District ("District") in Pennsylvania. From first until third grade, John Doe attended Bethel Springs Elementary School in that district.  First Am. Compl. ¶ 3; Tr. Wendy Reichert Dep. 10/13/11 ("Reichert Dep. I") 91:20-23.

In or around the fall of 2007, when John Doe was in third grade, he was diagnosed with Asbergers syndrome, an autism spectrum disorder.  John Doe's behavioral issues manifested itself in the form of verbal outbursts and tantrums, aggression problems, and inappropriate comments on the school bus.  The school also observed that John Doe had on more than one instance stood on the toilet in the boys' bathroom and looked at students in other stalls.  Reichert Dep. I 41:8-42:15; 31:3-7, 20-23; 69:18-70:12; Beverly Smith Dep. ("Smith Dep.") 20:5-23; Becky Konkle Dep. ("Konkle Dep.") 25:22-26:13.

In or around the spring of 2008, the District informed John Doe's mother, Wendy Reichert, that it could not provide the

---

[1] The facts presented here are undisputed unless otherwise noted. Disputed facts are read in the light most favorable to the nonmoving party, the plaintiff.  <u>Sheridan v. NGK Metals Corp.</u>, 609 F.3d 239, 251 n.12 (3d Cir. 2010).

therapy or support her son needed.  Ms. Reichert began having conversations with teachers and administrators about possible alternative placement outside of the District.  Reichert Dep. 1/18/12 ("Reichert Dep. II") 139:19-140:15; 141:12-14.

At an Individualized Education Program (IEP) meeting in May 2008, John Doe's IEP team discussed the possibility of moving him to an alternative school for the subsequent school year.  John Doe's IEP team at that point consisted of various members of the District, including the school psychologist and assistant director of special education, and Ms. Reichert, who also holds a post master's degree in school nursing.  Reichert Dep. I 10:3-8; Reichert Dep. II, 179:1-9; Smith Dep. 47:3-8; 52:22-53:8; 82:22-24.

One of the alternative schools considered by the IEP team was the Pathway School, located in Norristown, Pennsylvania.  The Pathway School is a private special education school for elementary and secondary students with autism, brain damage, learning disabilities, mental and physical handicaps, speech and language impairment, and social and emotional disturbance.  Pathway is on the list of state-approved placements and was Garnet Valley's recommended placement for

John Doe.  First Am. Compl. ¶ 5; Reichert Dep. I 50:17-19; 51:18-52:1; 46:3-5.

After visiting its campus, Ms. Reichert agreed with her son's placement at the Pathway School, and in September 2008, John Doe began attending Pathway.[2]  At the time of enrollment, John Doe was nine years of age.  Ms. Reichert understood that her son would be one of the younger children on campus, and she knew there would be eleven-year-olds in his classes.  Reichert Dep. I 54:21-55:11; Dep. Nina Prestia ("Prestia Dep.") 17:20-23; First Am. Compl. ¶ 9-11; Smith Dep. 56:12-16.

During the fall semester, John Doe took classes at the third-grade level, including a third-grade math class.  He was the youngest student in the class.  The oldest student was eleven years old.  Prestia Dep. 17:17-20; 18:3-10.

Sometime during that semester, Ms. Reichert approached the Pathway School to request that John Doe be placed in the fourth-grade math class.  Ms. Reichert felt that her son was not able to get instruction on his math level in the third-grade

_____

[2] John Doe was still a student of Garnet Valley School District and the District was responsible for his transportation to and from Pathway.  Smith Dep. 52:22-53:8; 131:9-20.

class.  This request was put forth and consented to by John Doe's IEP team at a January 2009 meeting, which was attended by Ms. Reichert, a number of Pathway faculty, and Beverly Smith, special education director and local education agent (LEA) on behalf of the District.  Prestia Dep. 32:17-33:18; Reichert Dep. II 10:24-11:16; Smith Dep. 29:14-30:1; 81:4-5, exh. 1 at 2.

Pathway's practice is to provide a waiver for the parent to sign, which would acknowledge parental consent to being in a class with students of older ages.  Pathway provided Ms. Reichert with such a written waiver.  However, Ms. Reichert never signed the waiver.  Prestia Dep. 14:14-24; Dep. Angela D'Alessandro ("D'Alessandro Dep.") 27:13-22; Reichert Dep. II 15:4-12.

Ms. Reichert knew that there would be students in the fourth-grade math class up to thirteen years of age, but not up to fifteen years.  With that knowledge, she gave permission for her son to enter the class during the spring semester. Specifically, Ms. Reichert signed a Notice of Recommended Educational Placement (NOREP) that corresponded to an IEP report noting an age difference of at least three years.  She had a phone conversation with Pathway and District employees in which she gave oral permission to place John Doe in the older class.

5

She also provided written permission for him to sit with his classmates at lunch. Among John Doe's classmates in the advanced math class was a fifteen-year-old student: T.Y.[3] Reichert Dep. II 13:24-14:15; 11:3-13:8; Smith Dep. exh. 1 at 6 (January 2009 IEP Form); 2/7/09 Reichert Email (Def. Pathway School Mot. for Summ. J. exh. H).

Sometime during his time at Pathway, John Doe became acquainted with an older student referred to in the papers as T.Y.[4] John Doe and T.Y. first met in the schoolyard and began interacting with each other frequently, both at school and on the phone. The Pathway School was aware of this friendship. Dep. John Doe 5/9/12 ("Doe Dep. I") 10:16-18; 76:9-18; D'Alessandro Dep. 44:9-19.

At some point around winter break 2008, and lasting until May 2009, John Doe and T.Y. began having sexual encounters while on school grounds and during school hours. The sexual

---

[3] Although Garnet Valley disputes the date on which John Doe and T.Y. first began taking the same class, it is undisputed that the two at one point had math class together. Tr. Hr'g 2/15/13 53:5-20. Deposition testimony from the fourth-grade math teacher states that T.Y. and John Doe were in math class together for 45 minutes each day. D'Alessandro Dep. 30:6-12; 42:1-24; 58:6-18. T.Y. states similarly in his deposition. T.Y. Dep. 76:9-18.

[4] During the relevant school year, 2008-09, T.Y. turned fifteen years old in March. T.Y. Dep. 10:14-15, 29:14-20.

contact took place in different bathrooms around the school. The first encounter was involuntary; following the first time, the two met numerous times to have oral and anal sex.[5]

The sexual encounters often took place in two bathrooms that were very close in proximity to the classroom of John Doe's homeroom teacher. On more than one encounter, John Doe left his homeroom class to go to the bathroom to meet T.Y., who had class in a different building and walked over to John Doe's building unaccompanied. The homeroom teacher's aide observed John Doe walking to the bathroom until John Doe shut the door. On several occasions, his teacher or her aide knocked on the bathroom door as John Doe and T.Y. were engaging in sexual acts but they were not discovered. John Doe was known by staff to regularly spend fifteen to thirty minutes in the bathroom. T.Y. Dep. 37:23-38:10; 63:8-15; 71:2-12; 80:15-81:1; Doe Dep. I 22:8-15, 29:10-14; 33:15-35:9; Doe Dep. II 50:9-52:8; 55:8-56:14; Jermaine Fisher Dep. ("Fisher Dep.") 40:24-41:5; 39:1-22.

---

[5] John Doe has testified that the two engaged in sexual acts 12 or 13 times, 10 or 11 times in the bathroom by his homeroom classroom. Doe Dep. I 40:8-18.

The sexual acts ended on May 5, 2009, when Ms. Reichert discovered a journal entry written by John Doe stating that he had had sex with T.Y. Ms. Reichert thereafter notified the Pathway School, Children and Youth Services, and the West Norriton Police Department. Upon questioning, T.Y. admitted to police that he had had sexual encounters with John Doe. Reichert Dep. II at 22:9-20; 26:12-18; 29:6-15; 32:4-12; Mark Wassmer Dep. 32:4-9.

B.     Defendant Garnet Valley School District's
       Involvement

The Garnet Valley School District was involved in the decision to place John Doe at the Pathway School. It identified a list of appropriate schools that were approved by the Department of Education and the local county boards and brought them to Ms. Reichert's attention. The District recommended that Pathway School be the school of placement; it had placed at least one other student with the Pathway School and had no negative experiences there. Ultimately, John Doe's IEP team, which consisted of District employees and Ms. Reichert, made the decision to place John Doe at the Pathway School. The recommendation was then made to the superintendent's office, who

gave oral approval to proceed.  Smith Dep. 59:18-60:7;  Reichert

Dep. II 179:1-13; Dep. Michael Christian ("Christian Dep.")

21:2-20; 22:19-23; Tr. Hr'g 2/15/13 47:21-48:6.

Following John Doe's placement at Pathway, the

District maintained some involvement in John Doe's day-to-day

activities and made some decisions related to his education.

First, whereas John Doe had a one-on-one aide at Bethel Springs,

he no longer had an aide at Pathway.[6]  According to District

employees, Pathway instructed the District to revise the IEP and

take the one-on-one aide off the IEP.  Similarly, whereas John

Doe used a private, one-person bathroom at Bethel Springs, he

did not have such accommodations at Pathway.  The decision to

have a private bathroom at Bethel Springs resulted from reports

that John Doe was climbing on stalls and looking at others.

John Doe's actions were not perceived as sexual in nature by

District employees[7] or Ms. Reichert, and they were not recounted

---

[6] It is undisputed that the student-to-staff ratio at Pathway was
much lower than that in the District.  Def. District Mot. at 32.

[7] For example, John Doe's teacher at Bethel Springs testified
that she did not find John Doe's actions to be sexually
inappropriate, but rather the actions of an eight-year-old who
enjoyed climbing.  Konkle Dep. 25:22-26:12.  See also Reichert
Dep. II 93:14-94:1.

to Pathway. Smith Dep. 61:12-71:8; Barbara Shaw Dep. ("Shaw Dep.") 86:10-87:7; 90:13-91:1.

In addition, beginning in January 2009, the District hired a paraprofessional to ride with John Doe on the bus to Pathway. Ms. Reichert was informed that the District hired a paraprofessional because John Doe was having "increasing issues" on the bus. The paraprofessional was instructed by Beverly Smith to "just write the behaviors down." The paraprofessional had noticed a pattern that John Doe's sexual behaviors were increasing but, abiding by her instructions from Ms. Smith, made notes only as to her observations of behaviors and did not note that the behaviors seemed to be increasing. Dep. Marian Seidman 37:11-23; Reichert Dep. I 119:17-120:1.

Finally, the District maintained involvement with John Doe through its role at his IEP meetings. Ms. Smith, as an LEA, was involved in the IEP team decision to move John Doe to the higher-level math class. During the team meeting, Ms. Smith did not inquire about the age of the older students and she did not know that a fifteen-year-old was in the class. She did not bring up her knowledge of John Doe's behavior in the bathroom while at Bethel Springs. Smith Dep. 80:22-81:5; 83:1-23; 131:3-8. See also Section C.1 infra.

C.    Defendant Pathway School's Involvement

The plaintiff has made two primary allegations of negligence against the Pathway School.  First, she argued that Pathway was negligent in placing John Doe in a classroom with a fifteen-year-old student without written informed parental consent.  Second, she argues that Pathway was negligent in failing to supervise John Doe and T.Y. despite having reason to be concerned.  The facts related to these allegations follow.

1.    Placing John Doe in Higher Math Class

Under Pathway School policies, written informed consent is required in order to place a student in a class with children more than three years older.  Here, John Doe's fourth-grade math class spanned an age range of at least five years, and would thus require a form.  Ms. Reichert had a copy of this form, but she never signed it.  Prestia Dep. 14:14-24; D'Alessandro Dep. 27:13-22; Reichert Dep. II 15:4-12.

Ms. Reichert did communicate to Pathway staff that she approved of John Doe's placement in the class, and she signed a Notice of Recommended Educational Placement (NOREP) that corresponded to an IEP report noting an age difference of more

than three years.[8]  However, the NOREP did not explicitly list the oldest age present in the math class, and Ms. Reichert did not know that a fifteen-year-old would be in the class. Reichert Dep. II 11:3-16; Def. Pathway Mot. exh. H; <u>see also</u> Smith Dep. Exh. 1 at 6 (January 2009 IEP Form).

### 2.   Failure to Supervise John Doe and T.Y.

The plaintiff also contends that Pathway was negligent in its supervision of T.Y. and John Doe, students with histories of social disciplinary issues.

With regard to T.Y., the record reflects that T.Y.'s disciplinary history at the Pathway School consisted of 136 discipline citations, including incidents of a sexual nature, bullying, and numerous elopements.  T.Y. was known to regularly elope from class, leaving the classroom building, and could not be found for periods of fifteen to thirty minutes.  During the relevant time period, Pathway did not assign an aide to T.Y.

_____

[8] According to Ms. Reichert, she signed this NOREP with the additional stipulation that the IEP team "continue to seek another [school] placement" for John Doe – that is, that John Doe transfer out of Pathway.  She sought this transfer because she did not feel that her son was being challenged in the third-grade math class.  Reichert Dep. I 111:23-112:20; Reichert Dep. II 11:9-16.

Pl. Opp. to Pathway exh. I (Incident Report); id. at exh. L,
Internal Investigation Report, at 2 (statement of Lorraine
Serzega, T.Y.'s teacher); T.Y. Dep. 28:20-29:5; 30:23-31:10;
32:18-21.

With regard to John Doe, his teacher and her classroom
aide observed around March 2009 that John Doe had been spending
extensive time in the bathroom.  The bathroom was very close in
proximity to the classroom.  John Doe was not accompanied to the
bathroom but was "observed" from the door, allowing for
instances where he eloped and instances in which sexual
encounters were interrupted by knocking but no adult actually
entered the bathroom.[9]  There is also evidence that Pathway had
received notes from the school bus paraprofessional hired by the
District, which stated that John Doe had demonstrated numerous
sexual behaviors while on the bus.  These behaviors occurred
around the same time that the sexual contact with T.Y. began.
Prestia Dep. 83:1-9; 102:24-103:23; Fisher Dep. 40:24-41:5,

---

[9] Julie Alleman, Director of Clinical and Behavioral Sciences at
the Pathway School, stated at her deposition that the homeroom
teacher's classroom was "split in half by the hallway . . . so
the teacher, teacher's aide or maybe another aide in the
classroom, would stand proximate to the hallway so that they
could see the students as they went down to the bathroom, so
they may not have always been escorted, but observed."  Dep.
Julie Alleman ("Alleman Dep.") 57:23-58:9.

39:1-22; Doe Dep. II 55:8-56:14, 60:7-22; Doe Dep. I 43:13-44:1; Smith Dep. 156:2-19; Tr. Hr'g 2/15/13 13:4-10.

After being alerted by Ms. Reichert of the sexual relationship between John Doe and T.Y, the Pathway School initiated an internal investigation and interviewed a number of teachers. According to the report, the math teacher of John Doe and T.Y. stated that she had seen the two "interacting with each other frequently as friends. . . . She feels that their friendship should be closely monitored and felt it was inappropriate given the difference in the boys' ages. She stated the relationship made her feel 'uncomfortable.'" Pathway Internal Investigation, Pl. Opp. exh. L, at 3 (statement of Angela D'Alessandro).

D.    Procedural History

The plaintiff filed her original complaint on January 28, 2011 and an amended complaint on April 11, 2011. Her amended complaint consists of two counts: 1) against the defendant Garnet Valley School District, a state-created danger claim under 42 U.S.C. § 1983; and 2) against the defendant Pathway School, a state law negligence claim.

Garnet Valley School District's Motion for Summary Judgment was filed on November 1, 2012. Pathway School's Motion for Partial Summary Judgment was filed on November 12, 2012. The motions were fully briefed by both parties. The Court held oral argument on February 15, 2013.

## II.   Analysis

In the instant case, the defendants have separately moved for summary judgment under Fed. R. Civ. P. 56(a).[10] Defendant Garnet Valley has argued that the plaintiff cannot sustain her state-created danger claim against it. Defendant Pathway School moves for partial summary judgment on the plaintiff's claim for punitive damages, arguing that she has failed to demonstrate deliberate indifference. The Court proceeds in this order.

---

[10] The defendant is entitled to summary judgment if there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating an absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  An issue is genuine if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party; it is material if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A.  Garnet Valley's Motion for Summary Judgment

The plaintiff asserts in her amended complaint that the District's actions and conduct with respect to its placement and supervision of John Doe at Pathway School violated its obligations under 42 U.S.C. § 1983 and the state-created danger doctrine.  The District argues that because the plaintiff has not put forth sufficient evidence to support her position, it is entitled to judgment as a matter of law.

In general, the Due Process Clause of the 14th Amendment does not impose an affirmative obligation on the state to protect its citizens.  DeShaney v. Winnebago Cnty. Dept. of Soc. Servs., 489 U.S. 189, 195 (1989).  However, there are two exceptions to this rule.  First, under the special relationship doctrine, a state is liable if the state affirmatively "restrain[s] the individual's freedom to act on his own behalf." Id. at 200.  Second, under the state-created danger doctrine, a state is liable if state authority is affirmatively employed in a manner that places him "more vulnerable to injury from another source than he or she would have been in the absence of state intervention."  Schieber v. City of Phila., 320 F.3d 409, 416 (3d Cir. 2003).  The plaintiff's claim against the District is asserted under the latter exception, state-created danger.

In order for a plaintiff to properly assert a state-created danger claim, she must establish the following four elements:

1)    The harm ultimately caused was foreseeable and fairly direct;

2)    The state actor acted with a degree of culpability that shocks the conscience;

3)    A relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts; and

4)    A state actor affirmatively used his authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Kneipp v. Tedder, 95 F.3d 1199, 1208-09 (3d Cir. 1996).

In the instant case, the plaintiff has argued that the following actions on the part of the District give rise to a state-created danger claim:  a) as part of the IEP team, the decision to place John Doe out-of-district at an alternative school; b) its decision to recommend and place John Doe at the Pathway School; c) its failure to alert Pathway School to John Doe's actions in the Bethel Springs bathroom; d) its decision

17

regarding the discontinuance of John Doe's one-on-one aide; e) its failure to properly monitor John Doe once he began to attend Pathway School; and f) as part of the IEP team, the decision to move him to the fourth-grade math class after his first semester at Pathway.  See Tr. Hr'g 2/15/13 30:23-31:5.  The first two actions took place as part of, or in the course of, the decision to place John Doe at Pathway.  The second two took place sometime during the summer before John Doe began attending Pathway.  The final two took place after John Doe began attending Pathway.  The Court will first analyze whether the facts surrounding each set of actions, separately, make out a state-created danger claim.  It will then analyze whether all the District actions, taken together, support the plaintiff's state-created danger claim.

### 1.   Decision to Place John Doe at Pathway

First, the Court considers the set of actions taken by Garnet Valley in the course of its decision to place John Doe at the Pathway School.  Garnet Valley recommended that John Doe be placed out-of-district at an alternative school and, separately, it recommended Pathway as that school.  The Court finds that these actions do not satisfy the foreseeability requirement of

the state-created danger doctrine because Garnet Valley did not have a sufficiently concrete reason to be on notice that the sexual assaults would occur at Pathway. Nor does the District's culpability in taking those actions "shock the conscience." Because the plaintiff has not demonstrated foreseeable, conscience-shocking behavior by the District, the Court need not analyze the other two requirements of a state-created danger claim.

### a. Foreseeability

In order to find that Garnet Valley is liable under the state-created danger doctrine, the plaintiff must first demonstrate that the harm caused to John Doe was sufficiently foreseeable and direct. Foreseeability exists if there is "an awareness on the part of the state actors that rises to [the] level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 238 (3d Cir. 2008). Put another way, at the time of its state action, the District must have had sufficient reason to be aware of the risk that the harm might occur.

The District's actions in placing John Doe at Pathway were not taken with sufficient notice of harm. When the decision was made, the District was not aware of a concrete risk that John Doe might be sexually assaulted on Pathway school grounds. In fact, its understanding was to the contrary: Pathway had been approved by the state as an alternative school for children with special education needs. The District's previous experience with Pathway had not resulted in any problems, and it had no knowledge of any previous sexual assaults that had occurred at Pathway. It was unforeseeable that John Doe's experience while attending Pathway would diverge so radically from the experience of others.

The plaintiff puts forth three arguments against this proposition. First, she contends that it was inappropriate to send John Doe, a student with Asbergers and a behavioral history with issues related to the bathroom, to Pathway to be the youngest student on campus. Pl. Opp. to District at 26. Relatedly, she argues that there is "an inherent danger" in placing a ten-year-old with older students. Id. In addition, she makes reference to an expert opinion that stated that the Individuals with Disabilities Education Act (IDEA) was

improperly followed in the course of deciding to place John Doe out-of-district in the first instance.  Id. at 43.

With regard to John Doe in particular, the Court holds that the evidence in the record does not demonstrate that the District had sufficient notice that he was likely to be sexually victimized at Pathway.  Such an argument could be termed a "propensity" argument – that John Doe's previous behavior may reflect a propensity for sexual behavior that should have been perceived and treated with caution by the District.[11]

John Doe's behavioral history did not put the District on notice of any "propensity" to be sexually victimized.  Although it was reported that John Doe had looked over bathroom stalls to observe other children while at Bethel Springs, his teachers and the Assistant Director of Special Education all stated that they did not believe these acts were sexual in nature.  John Doe's mother, who holds an advanced degree in

---

[11] The Court notes that the allegation here is that the District failed to foresee, and properly protect against, the "propensity" of the plaintiff, John Doe, to become a victim of sexual abuse.  In contrast, the state-created danger cases cited herein involve the "propensity" of a third-party perpetrator, not the plaintiff.  The Court takes no position on whether this difference changes the foreseeability analysis, because the evidence on the record does not support the plaintiff's foundational point that John Doe displayed signs of such a "propensity."

school nursing, also testified to that effect.  Ms. Reichert
corroborated the teachers' explanation that John Doe liked to
climb, and that he used the bathroom to escape the supervision
of his female teachers.  See, e.g., Doe v. Allentown, No. 06-
1926, Order on Summ. J., at *9, E.D. Pa. Mar. 21, 2012 (Docket
No. 286) (holding that although school officials knew that the
eventual perpetrator had a history of misbehaving in sexually
suggestive ways, there is no evidence that he had "done anything
that would have put [o]fficials on notice of the serious risk he
posed."); see also Morse v. Lower Merion Sch. Dist., 132 F.3d
902, 904 (3d Cir. 1997).

        In support of the "inherent danger" argument,
the plaintiff relies upon a Pennsylvania state regulation that
governs Pathway's handling of age range restrictions for
students with disabilities.  In relevant part, Pennsylvania Code
§ 14.146 provides that a "student with disabilities may not be
placed in a class in which the chronological age from the
youngest to oldest child exceeds [three years in elementary
school] unless an exception is determined to be appropriate by
the IEP team of the student and is justified in the IEP."  22
Pa. Code § 14.146.  Thus, by state regulation, in order to place
a student with disabilities in a class with others more than

three years older, the IEP team, including the parent, must determine that such an exception is appropriate and justified. According to the plaintiff, this regulation demonstrates that there is an inherent danger in the actions of the District in placing John Doe with older students.

The relevance of this state regulation is minimized, however, by the fact that John Doe was not immediately placed into the advanced math class upon his arrival at Pathway. When John Doe first enrolled at Pathway, he was nine years old and the oldest student in his class was eleven; thus, the age difference was less than three years under discussion in 22 Pa. Code § 14.146. It was only after he moved to the advanced math class the next semester that he became integrated with fifteen-year-olds. Thus, it is important to distinguish between the District's action in placing John Doe at Pathway, a decision in which the District was very involved, and the later action of moving John Doe to the fourth-grade math class, a decision in which the District had a minor role, as discussed infra.

The plaintiff also relies upon opinions stated by the assistant superintendent and a Pathway schoolteacher which refer to a certain "inherent" danger in mixed-age classes. Pl. Opp. to Dist. Mot. at 37; Tr. Hr'g 2/15/13 27:20-28:15. Yet these

statements were made in hindsight and in the context of describing John Doe's spring semester at Pathway — that is to say, unsupervised contact between a ten-year-old and a fifteen-year-old — and not what the District was aware of when making its placement decision in the first instance.

At the time the District made the decision to place John Doe at Pathway, the District was not aware of potential violations of state regulations. It had no reason to be suspicious of Pathway's offerings, except for the general understanding that John Doe would be on a campus with older students. This had occurred in the past without problem and is insufficient to support a finding of foreseeability here.

The Third Circuit's foreseeability analysis in Morse v. Lower Merion School District is relevant. In Morse, the survivors of a teacher who was shot and killed in her classroom brought suit against the school district that maintained the premises. 132 F.3d 902, 904 (3d Cir. 1997). The shooter had entered the building through a rear entrance that was unlocked, in violation of school policy, to allow construction contractors to come and go more easily. Id. The shooter was a local resident with a history of mental illness who had been seen

loitering in the school area in the week preceding the murder.
Id. at 908.

The Third Circuit held that, as a matter of law, the
plaintiff did not demonstrate foreseeable and fairly direct
harm.  The defendant's awareness of the shooter's loitering was
insufficient to put it on notice that she — or any other person
— would later engage in a school shooting; moreover, her attack
was not a "fairly direct" result of the unlocked rear door.  Id.
at 908-09; see also Grau v. New Kensington Arnold Sch. Dist.,
429 Fed. Appx. 169, 173-74 (3d Cir. 2011) (finding inadequate
and attenuated foreseeability where, after defendant school
failed to close the campus during school hours, a truant student
left school early and was killed in an ensuing car crash);
compare Kneipp, 95 F.3d at 1208 (finding foreseeability in the
harm caused when defendant police officers encountered a clearly
intoxicated woman, sent her companion home first, failed to
escort the intoxicated woman home, and the woman fell down a
flight of stairs).

In Morse, even though a safety policy had been
violated, and even though the school had observed the shooter
"loitering" in the parking lot the week before the shooting, the

Court found that this was insufficient to give notice that she would come back armed with a gun.  Here, the District had selected Pathway from a list of state-approved placements. It had not experienced any problems (sexual or otherwise) with Pathway in the past.  It was aware that John Doe would be placed with older students, but this decision was approved by the IEP team and involved a less-than-three-year age difference.  As for John Doe specifically, the District was aware of a number of his behavioral problems, including incidents in the bathroom, but nothing that would bring about an awareness of a risk that he would become sexually victimized.

Finally, the plaintiff argues that the District violated many IDEA provisions in the course of deciding to place John Doe out-of-district in the first instance.  According to the plaintiff, the District's violations of IDEA are relevant in foreseeability analysis because "IDEA regulations exist for a reason, and violations of IDEA would naturally result in foreseeability consequences."  Pl. Opp. at 43.  The Court finds that the IDEA failures identified in this particular case, namely failures to conduct appropriate re-evaluations, modify behavior plans, and enact proper disciplinary measures, do not give rise to sufficient notice to satisfy the foreseeability

requirement.  To find foreseeability, the Court would have to accept the premise that the IDEA violations may have resulted in a mistaken conclusion that a student could not be educated within the District, which may have resulted in the District's recommendation of placement at Pathway School, which may have resulted in a placement in a higher math class, which may have resulted in the sexual assaults of John Doe.  Report, Andreas Demidont at 25 (Docket No. 48-21).  This is far too attenuated.

b.  "Shocks the Conscience"

For similar reasons, the plaintiff has not demonstrated that the District "acted with a degree of culpability that shocks the conscience."  Kneipp, 95 F.3d at 1208-09.  The "shocks the conscience" standard changes with the amount of time the state actors have to deliberate.  Sanford v. Stiles, 456 F.3d 298, 309 (3d Cir. 2006).  Here, both parties agree that given the amount of time for forethought, the District's deliberate indifference would be sufficient to shock the conscience.  See id. ("[I]n cases where deliberation is possible and officials have the time to make 'unhurried judgments,' deliberate indifference is sufficient."); see also Def. District Mot. at 24.  An action is taken with deliberate

indifference if it "evince[s] a willingness to ignore a foreseeable danger or risk." <u>Morse</u>, 132 F.3d at 910.

The Court holds that the District's decisions with respect to recommending and choosing Pathway School were not taken with deliberate indifference. The District's decisions were made by weighing the facts in front of it, including its understanding of Pathway and the behavioral history of John Doe. The District could not have reasonably foreseen that its actions would result in the sexual abuse of John Doe, and, in making these decisions, it did not ignore any such foreseeable risk. <u>See</u> <u>id.</u> ("Of course, the notion of deliberate indifference contemplates a danger that must at least be foreseeable."). The District's actions with respect to placing John Doe at the Pathway School fails the "shocks the conscience" requirement, as well.

### 2.  Actions Taken During the Summer

Second, the Court considers District actions taken after the initial decision to place John Doe at Pathway. Sometime before the fall of 2008, the District decided, without a full IEP evaluation, to remove the one-on-one aide previously

assigned to John Doe when he attended Bethel Springs.[12]  In
addition, it did not inform Pathway about John Doe's previous
bathroom stall-climbing.

The Court holds that the District's decision to remove
the one-on-one aide fails the foreseeability and "shocks the
conscience" tests.  Given that Pathway School dealt exclusively
with special needs children, and that it had a better staff-to-
student ratio, it was reasonable to concur with Pathway's
position that John Doe no longer needed a District aide.  Aside
from the same set of "warning signs" discussed above, the
District did not have any additional information that would have
increased its awareness of a risk to John Doe.  Thus, at the
time it made the decision to remove the aide, the District was
not on sufficient notice that this decision could result in the
sexual assaults that ultimately occurred.

_____

[12] There is dispute as to whether proper procedures were followed
in removing the one-on-one aide.  Even if, by construing the
facts in the light most favorable to the nonmoving party, the
Court concluded that the IDEA was violated, this would still be
insufficient to give rise to a state-created danger claim.  It
does not shock the conscience that the District relied upon
Pathway's communication of its support needs without obtaining
consent from the IEP team.  Moreover, it is not foreseeable that
a failure to obtain formal consent would result in the
subsequent sexual assault of John Doe.  The fact that an IDEA
violation occurred cannot in and of itself make an event
foreseeable when, as here, it otherwise was not.

The District's decision not to tell Pathway about John Doe's actions in the bathroom fails the foreseeability and "shocks the conscience" requirements, as well. Because the teachers and administrators at Bethel Springs did not categorize John Doe's behaviors as sexual in nature, which was corroborated by testimony from Ms. Reichert, it was not sufficiently foreseeable that a decision not to relay that information to Pathway would result in harm to John Doe.

Moreover, it is clear that the District's failure to relay this information falls squarely outside of the "affirmative act" requirement[13] of a state-created danger claim. The state-created danger claim is "predicated upon the states' affirmative acts which work to the plaintiffs' detriments in

---

[13] Although the term "affirmative" is a difficult standard-bearer because "the line between action and inaction may not always be clear," the Third Circuit has observed that it has "never found a state-created danger claim to be meritorious without an allegation and subsequent showing that state authority was affirmatively exercised." Bright, 443 F.3d at 282. For example, in Ye v. United States, the Third Circuit held that a defendant's assurance to the plaintiff that he was "fine," when in fact the plaintiff required emergency care, was not a sufficiently "affirmative" act. 484 F.3d 634, 643 (3d Cir. 2007). The Court reasoned that because he could have acted on his own behalf to obtain private assistance, the state action did not "cause" his harm. Id.; see also Walter v. Pike Cnty., Pa., 544 F.3d 182, 194 (3d Cir. 2008).

terms of exposure to danger."  D.R. v. Middle Bucks Area
Vocational Tech. Sch., 972 F.2d 1364, 1374 (3d Cir. 1992), as
cited in Bright v. Westmoreland Cnty., 443 F.3d 276, 282 (3d
Cir. 2006).  The dispositive factor is whether the state actors
"used their authority to create an opportunity that otherwise
would not have existed for the third party's crime to occur."
Morse, 132 F.3d at 908 (internal citation omitted).

        Here, the District's failure to convey the stall-
climbing information to Pathway is not an affirmative act.  It
did not create an opportunity that otherwise would not have
existed for the third party's crime to occur.  See, e.g., D.R.
v. Middle Bucks Area, 972 F.2d at 1367 (in a sexual assault on
school grounds case, holding that teachers' failure to supervise
"show nonfeasance but they do not rise to the level of a
constitutional violation"), cited positively by Kneipp, 95 F.3d
at 1207; see also Bright, 443 F.3d at 283.  It may have been
helpful to relay all information about John Doe to Pathway
during the transition period, but a failure to have done so will
not give rise to a state-created danger action.

### 3.    Actions Taken Upon Enrollment at Pathway

Next, the Court considers the District's actions after John Doe was enrolled at Pathway.  The plaintiff has alleged that the District is liable for its failure to properly monitor John Doe, specifically with respect to monitoring his actions on the bus and with respect to its involvement in placing John Doe in the fourth-grade math class.  The Court finds that neither of these actions supports a claim of state-created danger.

The record reflects that upon John Doe's enrollment at Pathway, the District's involvement in his day-to-day education reduced a significant degree.  Although the District remained tasked with ensuring that John Doe had access to a free appropriate public education, its level of involvement can reasonably reflect the fact that John Doe was schooled and monitored by Pathway.  From a legal perspective, this decrease in level of involvement affects whether the District's "act" was sufficiently affirmative in "creating" the opportunity for the sexual assaults to occur.

The plaintiff argues that two actions taken by the District after John Doe was enrolled at Pathway give rise to a state-created danger claim.  First, she points to the actions taken by the District with regarding to bussing John Doe to and

from school.  Sometime in January 2009, the District had hired a paraprofessional to observe John Doe's actions on the bus, and that paraprofessional was instructed by the District to "just write the behaviors down" and not offer her conclusions as to patterns of behavior.  The plaintiff contends that the District's instruction to the paraprofessional was an order to put her "head in the sand."  Pl. Opp. to Dist. Mot. at 16.

Although the paraprofessional did not report on patterns of increased sexual behaviors, she did report on the specific incidents that occurred, some of them being sexual in nature.  The paraprofessional's report should have provided the District with approximately the same amount of information as it would have received without that instruction.  The District's instruction to the paraprofessional, therefore, did not "create" the conditions for the sexual assaults.

Second, the plaintiff contends that the District's involvement in the allegedly improper placement of John Doe in the fourth-grade math class can sustain her state-created danger claim.  Upon entering Pathway, John Doe had been placed in the third-grade math class.  However, Ms. Reichert petitioned for his placement in an advanced class, which was granted by the IEP

team sometime in early 2009. Ms. Reichert did not sign the permission form provided by Pathway.

Taking the evidence in the light most favorable to the plaintiff, the Court does not find that the District's actions created the conditions in which John Doe was sexually victimized. The District's involvement in the IEP decision was limited to the participation of Ms. Smith, the District's LEA. At that point, the IEP team consisted of ten members: eight Pathway staff, Ms. Smith, and John Doe's mother.

In the context of a state-created danger claim, the Court has not found (nor has the plaintiff pointed to) any case law for the proposition that one state actor's participation in a team decision is sufficient to satisfy the "affirmative act" requirement. It is unclear whether a state authority is "affirmatively exercised" when the decision was made by a team including, among other interested parties, a state actor.

Notwithstanding the affirmative act requirement, the plaintiff's claim also fails on foreseeability and the "shocks the conscience" standard. When the IEP team made the decision to approve John Doe's math class placement, the District (through Ms. Smith) still did not have sufficient information to place it on notice that harm to John Doe would likely result.

34

Due to its limited involvement up to that point, it had obtained minimal additional information apart from what has already been discussed by the Court.[14] As part of the IEP team, Ms. Smith was privy to the same set of information as Ms. Reichert. Ms. Smith was not aware that there would be fifteen-year-olds in the advanced math class. She has testified that she relied on the opinions of Pathway staff, who had a better understanding of John Doe's current academic and social needs. The Court holds that Ms. Smith's decision to agree with the IEP team does not evince foreseeability and certainly does not shock the conscience as required under this doctrine.

Finally, having conducted the analysis as to each set of District actions and having determined that they individually do not give rise to a state-created danger claim, the Court now considers all of the District actions together as a whole. The Court holds that the District's actions, taken together, do not make out the plaintiff's state-created danger claim. At no point did the District have sufficient notice that John Doe would become subjected to sexual assault. None of its actions,

---

[14] The District did not receive the reports from the school bus paraprofessional until after the decision was made to move John Doe to the fourth-grade math class.

pre- and post-placement, were taken with a culpability that shocks the conscience.  In addition, some of these purported actions were not actually actions at all.  The Court acknowledges the plaintiff's argument that the nonactions still have some relevance as to foreseeability, but the case law is clear that nonactions cannot be "brought within the scope of the state-created danger doctrine by pointing to an affirmative action of the state which preceded it."  Bright, 443 F.3d at 284; see also Walter v. Pike Cnty., 544 F.3d at 196.

Taking all of the District acts together, the District did not "create" the harm that was subsequently, and quite tragically, suffered by John Doe.  The Court does not find a basis for District liability under the state-created danger doctrine.  For all of these reasons, the Court grants the defendant Garnet Valley School District's motion for summary judgment.


B.    Pathway's Motion for Partial Summary Judgment

The plaintiff's cause of action against the defendant Pathway School sounds in negligence, but she also seeks punitive damages related to these acts of negligence.  Am. Compl. at ¶ 39(g).  In its motion for partial summary judgment, Pathway

School argues that the plaintiff has not put forth sufficient facts on which a reasonable jury would award punitive damages.

In Pennsylvania, the imposition of punitive damages is governed by the Restatement (Second) of Torts § 908. <u>Hutchison ex rel. Hutchison v. Luddy</u>, 582 Pa. 114, 120 (2005). Under the Restatement (Second), punitive damages may be awarded for conduct that is outrageous because of the defendant's 1) evil motive or 2) reckless indifference to others. Restatement (Second) of Torts § 908 (2). The plaintiff does not need to prove actual knowledge to assert a claim for punitive damages; the relevant standard is reckless indifference.

Reckless indifference is defined as "knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." Restatement (Second) of Torts § 500. Under Pennsylvania law, such conduct involves an actor having knowledge, or reason to have knowledge, of facts which create a high degree of risk of physical harm to another, and deliberately proceeds to act (or fail to act) in conscious

disregard of or indifference to that risk.  Id. at cmt. a;
Hutchison, 582 Pa. at 122, n.7.

In assessing punitive damages, the factfinder should
consider the character of the defendant's act, the nature and
extent of the harm to the plaintiff that the defendant caused,
and the wealth of the defendant.  Restatement (Second) § 908(2).
Punitive damages may not be awarded for mere inadvertence,
mistake, or errors of judgment.  Id. at cmt. b.

After examining the evidence on the record in its
entirety, the Court finds that the plaintiff has put forth
sufficient facts to support a finding of Pathway School's
reckless indifference to John Doe's safety.  These facts relate
to violations of school policies, the physical circumstances
surrounding the sexual acts, and Pathway's understanding of the
behaviors of John Doe and T.Y.  Of particular note is the fact
that T.Y.'s disciplinary record reflected over one hundred
discipline citations, including incidents of a sexual nature and
numerous elopements.  In addition, many of the sexual encounters
occurred over a period of up to thirty minutes and took place in
a bathroom located a few feet away from John Doe's classroom.

Finally, under the Restatement (Second), the
factfinder can consider the character of the defendant's act,

the nature and extent of the harm to the plaintiff that the defendant caused, and the wealth of the defendant. Restatement (Second) § 908(2). Given the facts on the record, a jury could reasonably find that the character of the defendant's acts were worthy of punishment and that the nature of harm to the plaintiff is serious and permanent. The Court holds that there is a genuine issue of material fact as to whether Pathway demonstrated reckless indifference in its supervision of John Doe and T.Y., and as such this claim should proceed to a jury.

In conclusion, the Court grants the defendant Garnet Valley School District's motion for summary judgment. The plaintiff's contention that the District's actions give rise to a state-created danger claim fails as a matter of law. However, because the Court has found sufficient evidence to support the plaintiff's claim for punitive damages against Pathway School, the Court denies the defendant Pathway School's motion for partial summary judgment.

An appropriate order shall issue separately.